IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| KELSEY JEAN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20-cv-1145-SHM-cgc |
| | ) | |
| NATHANIEL SHOATE, SCOTT CORNELSON, and ROBERT POMEROY, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANT POMEROY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kelsey Jean King ("King") alleges that Defendant Robert Pomeroy ("Pomeroy") has violated the First and Fourth Amendments of the United States Constitution and Sections 39-16-502 and 39-11-620 of the Tennessee Code. She alleges that Pomeroy committed the torts of false imprisonment, defamation, property damage, excessive force, and assault.

Before the Court are King's Motion to Strike, ECF No. 75, and Pomeroy's Motion for Summary Judgment. (ECF No. 61.) The Court requested additional briefing. (ECF No. 79.) Both parties responded. (ECF Nos. 80, 82.) For the following reasons, the Motion to Strike is **DENIED,** and the Motion for Summary Judgment is **GRANTED**. King's claims against Pomeroy are **DISMISSED**.

**I. Background**

On July 2, 2019, Defendant Officer Nathaniel Shoate ("Shoate") pulled over Reem Cooper ("Cooper") for speeding. (ECF No. 59-2 at ¶ 1.) King was a passenger in the car. (Id. at ¶ 2.) Multiple officers assisted in the traffic stop, including Defendants Pomeroy and Scott Cornelson ("Cornelson"). (Id. at ¶ 3.) The officers asked Cooper for his license and registration. When Cooper was not able to produce them, the officers asked him to get out of the car. (ECF No. 59-3, Exhibit A, at 00:18.) Cooper got out and spoke with the officers. (Id. at 00:30-13:00.) The officers asked King to get out of the car so that they could conduct a K-9 search of the car. (Id. at 13:25-14:20.) After initially refusing to get out, King complied and began filming the officers with her phone. (Id. at 13:25-15:52.) She asked the officers for their names. (Id. at 15:52-16:25.)

The officers asked King and Cooper to step away from the vehicles so the K-9 unit could search the car. (Id. at 21:05-25.) While Shoate was standing next to one of the vehicles asking Cooper for personal information needed to fill out the traffic citation, King stood directly behind Shoate. (Id. at 29:56.) The officers told King to step back, but she did not move. (Id. at 29:50-30:02.) After instructing King to step back several times, the officers arrested her. (Id. at 30:12-25.) Shoate handcuffed her. (Id.)

King was taken to another police car where an officer removed her handcuffs and replaced them with a new pair.[1] (Id. at 33:05-40.) King was searched. (Id. at 36:10.) King was eventually placed in a police car and driven to a police station, (id. at 41:40-1:04:00), where officers filled out paperwork. (Id. at 1:04:00-1:17:00.)

## II. Jurisdiction

### A. Federal Question Jurisdiction

District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. King brings claims under 42 U.S.C. § 1983. (ECF No. 12.) The Court has original jurisdiction over those claims.

### B. Supplemental Jurisdiction

A district court can exercise supplemental jurisdiction over claims that are so related to the claims forming the basis of original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

A federal court that has dismissed all federal claims should not ordinarily reach state-law claims. Moon v. Harrison Piping Supply, 465 F.3d 719, 728 (6th Cir. 2006). This Order, taken with the Order addressing Shoate and Cornelson's Motion for

---

[1] The officer who changed King's handcuffs is not a party to this case.

3

Summary Judgment, dismisses all federal claims. Trial courts have some discretion to decide pendent state-law claims after all federal claims have been dismissed.[2] *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991). In deciding whether to resolve a pendent state-law claim on the merits, a trial court "must balance the interests in avoiding needless state law decisions . . . against the 'commonsense' policies of judicial economy. . . ." *Id.*

The balance of interests favors exercising supplemental jurisdiction over King's state-law claims against Pomeroy. The state-law claims arise from the same set of facts as the federal claims. The state-law claims involve well-established areas of Tennessee tort law. Addressing the state-law claims promotes judicial economy without requiring the Court to resolve difficult questions of Tennessee law.

**III. Standard of Review**

Summary judgment is warranted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of

---

[2] Pendent jurisdiction and ancillary jurisdiction were codified under the term supplemental jurisdiction in 28 U.S.C. § 1367. The Court uses the term pendent jurisdiction here to be consistent with the cited cases. The term is meant to be used interchangeably with supplemental jurisdiction.

material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of her case. Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018). There is a dispute about a material fact if the evidence is such that a reasonable jury could return a verdict for the nonmovant. EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc). Inferences must be drawn in the light most favorable to the nonmovant. Bledsoe v. Tennessee Valley Authority Board of Directors, 42 F.4th 568, 578 (6th Cir. 2022). When video of the events pertinent to the case exists, the reviewing court need not credit a party's assertions that are blatantly contradicted by the video. Cunningham v. Shelby County, Tenn., 994 F.3d 761, 763 (6th Cir. 2021) (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007)).

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" F.D.I.C. v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

## IV. Analysis

### A. Motion to Strike

King asks the Court to strike Pomeroy's Motion for Summary Judgment on the ground that Pomeroy did not notify King when he filed the Motion, depriving her of the opportunity to respond. (ECF No. 75.) King does not cite a procedural basis for her Motion. Even assuming striking the Motion would be the proper remedy, King's justification fails.

King consented to receive Notices of Electronic Filing and provided an e-mail address. (ECF No. 48.) There is a presumption of delivery and receipt for all e-mails sent using the Court's CM/ECF system. E.g., Am. Boat Co. v. Unknown Sunken Barge, 567 F.3d 348, 350 (8th Cir. 2009). Mere denials of receipt do not rebut the presumption. Holland v. Red River Trucking, LLC, No. 10-cv-218, 2011 WL 13318616, at *3 (E.D. Ky. Jan. 12, 2011). King merely denies receipt. She does not rebut the presumption. King's claim is further weakened because Pomeroy's Motion for Summary Judgment was filed on the same day that Defendants Shoate and Cornelson filed their Motion for Summary Judgment, to which King responded. (ECF Nos. 59, 61, 65.)

Assuming striking the Motion would be the proper remedy, King has not rebutted the presumption of receipt. The Court finds no basis to "strike" Pomeroy's Motion.

King asks for additional time to respond to Pomeroy's Motion. (ECF No. 75 at 2.) The Motion was filed on December 7, 2022. (ECF No. 61.) King had 28 days to respond. L.R. 56.1(b). When a party seeks an extension of time after the deadline to respond has passed, the court may grant an extension only if the failure to act is the result of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). King's claim that she did not receive Pomeroy's Motion is unsupported and discredited by her response to Shoate and Cornelson. Her failure to timely respond was not the result of excusable neglect. Her Motion to Strike is **DENIED**.

**B. Motion for Summary Judgment**

**1. Federal claims**

Pomeroy argues that King's claims fail on the merits and that he is protected by qualified immunity. Because the claims fail on the merits, the Court need not address Pomeroy's arguments on qualified immunity.

**a. Fourth Amendment Claims**

King alleges that her Fourth-Amendment rights were violated when officers tackled her to the ground, attempted to search her car without her consent, handcuffed her too tightly, and arrested her without cause. (ECF No. 12.) The Court has reviewed body-camera footage from the time of the initial traffic stop to the time King was placed in the police car and driven to the police station. King was not tackled at any point in the video. (See

7

ECF No. 63, Exhibit A.) She has retracted her claim that she was tackled. (ECF No. 82 at 4.)

When evaluating potential officer misconduct, each defendant's liability must be evaluated individually based on the defendant's own actions. Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010) (collecting cases). Even if the other alleged Fourth Amendment violations occurred, Pomeroy did not commit them. He did not open King's car door, shine a flashlight into her car, take her phone or other possessions, handcuff her, or arrest her. (See ECF No. 63, Exhibit A.) Pomeroy's Motion for Summary Judgment on King's Fourth Amendment claims against him is **GRANTED**.

### b. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must show that 1) she engaged in a protected activity, 2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was motivated by the protected conduct. Sensabaugh v. Halliburton, 937 F.3d 621, 627-28 (6th Cir. 2019).

King cannot satisfy the third element. Every circuit that has considered the question has found a First Amendment right to film the police. Irizarry v. Yehia, 38 F.4th 1282, 1290-92 (10th Cir. 2022) (discussing Fordyce v. City of Seattle, 55 F.3d 436

8

(9th Cir. 1995); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000); Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011); Am. C. L. Union of Illinois v. Alvarez, 679 F.3d 583 (7th Cir. 2012); Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017); Fields v. City of Philadelphia, 862 F.3d 353 (3d Cir. 2017)). Neither the Supreme Court nor the Sixth Circuit has ruled on the issue.

Even if King's activity were protected and the requisite adverse action had been taken against her, King's claim would fail because she cannot satisfy the third element. The officers never told King to stop filming them. One officer encouraged her to keep filming. (ECF No. 59-3 at 6:01-27.) All of the officers were wearing active body cameras. There was to be a record of their conduct whether or not King filmed them. King was arrested only after officers instructed her not to stand behind Shoate while he was writing Cooper's traffic citation. The evidence establishes that the officer's action was not motivated by King's protected conduct. Pomeroy's Motion for Summary Judgment on King's First Amendment retaliation claim against him is **GRANTED**.

### 2. State-law claims

#### a. Filing a False Arrest Report

King brings a claim under § 39-16-502 of the Tennessee Code for filing a false arrest report. (ECF No. 12 at 5.) Section 39-16-502 is a criminal statute. It does not create a private right of action. Tenn. Code Ann. § 39-16-502. Tennessee law requires

9

that private rights of action be expressly provided for in the relevant statute. Tenn. Code Ann. § 1-3-119. Pomeroy's Motion for Summary Judgment on King's § 39-16-502 claim is **GRANTED**.

### b. False Imprisonment

To establish a tort claim of false imprisonment, a plaintiff must show that she was detained or restrained against her will and that the detention or restraint was unlawful. See Newsom v. Thalhimer Bros., Inc., 901 S.W.2d 365, 367 (Tenn. Ct. App. 1994). Tennessee courts have said the unlawfulness inquiry turns on "just cause" or "probable cause." See Brown v. Christian Bros. Univ., 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013). King cannot show that her arrest was unlawful because the officers had probable cause to arrest her.

Tennessee law makes it illegal to fail to comply with any lawful order or direction of a police officer. Tenn. Code Ann. § 55-8-104. King was told multiple times to step back so that Shoate could complete the paperwork related to the traffic stop. (ECF No. 59-3, Exhibit A at 29:46-52; 30:02-05.) King remained close to the officers, prompting the arrest. (Id. at 30:15.) The officers had probable cause to arrest King. Her detention was lawful. The Motion for Summary Judgment on King's false imprisonment claim against Pomeroy is **GRANTED**.

### c. Defamation

To establish a defamation claim under Tennessee law, a plaintiff must show that a party published a statement, with knowledge that the statement was false and defaming to the other or with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Hibdon v. Grabowski, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005). King has not alleged that any of the officers published a false statement about her. Pomeroy's Motion for Summary Judgment on King's defamation claim is **GRANTED**.

### d. Property Damage

Pomeroy challenges King's property damage claim. As Pomeroy correctly notes, King's property-damage claim is limited to Officer Shoate. (ECF No. 12 at 5.) It does not apply to Pomeroy. His Motion for Summary Judgment on that claim is **GRANTED**.

### e. Excessive Force

King brings an excessive force claim under § 39-11-620 of the Tennessee Code. (ECF No. 12 at 6.) Section 39-11-620 is a criminal statute. It does not contain a private right of action. Tenn. Code Ann. § 39-11-620. Tennessee law requires that private rights of action be expressly provided for in the relevant statute. Tenn. Code Ann. § 1-3-119. The Court construes King's excessive force claim as a civil rights claim under 42 U.S.C. § 1983. For the reasons discussed above, a § 1983 excessive force

11

claim fails. King was never tackled, and Pomeroy did not handcuff her.

King argues that Pomeroy can be held responsible although another officer handcuffed her because Pomeroy referred to Cooper as a "crack dealer" and told the officer in charge of the K-9 search that King probably had drugs. (ECF No. 82 at 4.) For an officer to be held liable for inflicting excessive force, the plaintiff must prove the officer actively participated in the use of excessive force, supervised the officer who used excessive force, or owed the victim a duty of protection against the use of excessive force. Alexander v. Carter for Byrd, 733 F. App'x 256, 261-62 (6th Cir. 2018.) King's claim based on Pomeroy's statements does not establish any of the grounds for liability stated in Alexander. King was not a victim of excessive force. Pomeroy's Motion for Summary Judgment on King's excessive force claim is **GRANTED**.

### f. Assault

Under Tennessee law, a defendant cannot be liable for assault unless he commits an intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff. Johnson v. Tyson Foods, Inc., 607 F. Supp. 3d 790, 809 (W.D. Tenn. 2022). Pomeroy never touched King or acted to create a reasonable apprehension of physical harm. King claims that Pomeroy's statements before her arrest created a reasonable

12

apprehension of imminent physical harm. (ECF No. 82 at 5.) Pomeroy said "I'd back up" after Shoate warned King to step back. (ECF No. 61, Exhibit A, at 30:00-30:12.) When Shoate arrested King, Pomeroy said, "I tried to tell you." (Id.) A reasonable jury could not find that either or both of those statements would create a reasonable apprehension of imminent physical harm.

King also argues that statements Pomeroy made to the officer in charge of the K-9 search led to her arrest. (ECF No. 82 at 5.) Pomeroy referred to Cooper as a "crack dealer" and told the officer in charge of the K-9 search that King probably had drugs. (ECF No. 61, Exhibit A-2, at 7:00-7:26.) The video does not show any action during King's arrest that constitutes assault. Even if Pomeroy's statements caused King's arrest, there would be no basis for liability. Pomeroy's Motion for Summary Judgment on King's assault claim is **GRANTED**.

### V. Conclusion

For the foregoing reasons, King's Motion to Strike is **DENIED**. Pomeroy's Motion for Summary Judgment is **GRANTED**, and the claims against him are **DISMISSED**.

So ordered this 26th day of June, 2023.

                                        /s/ *Samuel H. Mays, Jr.*
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE